JAMES W. GRAHAM, Claimant and Appellant, *v.* ROBERT E. and BERNARD HELEAN, Employers, and GLACIER GENERAL ASSURANCE COMPANY, Defendant and Respondent.

No. 10727

Submitted April 6, 1964. Decided June 11, 1964.

393 P.2d 46

Lee Jordan (argued), Missoula, for appellant.

Erwin L. Anzjon (argued), Missoula, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Claimant in this cause suffered an industrial accident on September 8, 1960, while working as a sawyer. His injuries resulted in facial anesthesia. In the employer's first report of injury it was stated that the claimant was working on a piece basis and being paid at the rate of $3 per thousand feet of lumber sawed and his wages were shown as approximately $260 to $300 every two weeks.

Claimant in his claim for benefits gave his earnings at the time of injury as approximately $200 per week. By reason of this discrepancy, and because the employee did not have complete records, in December, 1961, the employer was requested to advise counsel for the claimant of his exact weekly earnings during his period of employment. No answer was received. Claimant then requested a hearing before the Industrial Accident Board hereafter called the Board. Upon receipt of notice that the hearing would be held counsel again wrote the employer requesting them to supply the information previously requested concerning pay at the time of and prior to the in-

jury. No reply was received. At the hearing claimant testified that he was earning approximately $200 per week at the time of his injury, and detailed his various employments since he returned to work and the amount of money he earned in such employments, which demonstrated that his earnings were at times less than $200 per week, and at other times in excess thereof.

Thereafter the Board found that the claimant was employed on a piece work basis of $3 per thousand board feet; that he had been injured, treated and returned to work and that his physician had estimated his physical ability had been impaired approximately five percent by reason of loss of sensation in the injured area; "that these residuals will be a nuisance, and to some degree a handicap to the claimant in the performance of his employment as a woodsman." Further, that the claimant had been employed after his release from treatment; that he complained of symptoms of headache and nosebleed and the need for plastic reconstructive surgery; that in the event further medical treatment was needed he would again become temporarily totally disabled and entitled to draw compensation. The Board retained jurisdiction to award further compensation in the event that claimant was disabled, under medical care and unable to perform work. Claimant was awarded compensation from the date of the accident, September 8, 1960, until his return to work on October 13, 1960, and provision made for further hospitalization and medical treatment if required, and payment of compensation for any future period of disability necessitated thereby.

An application for rehearing was filed by the claimant and denied by the Board. An appeal was taken to the district court. The district court's findings were similar to those of the Board except that the court found that claimant earned $260 semi-monthly and the court affirmed the order of the Board.

On this appeal error on the part of the Board is specified: (1) In its failure to establish claimant's weekly pay rate at

$200 per week; (2) In failing to order the insurance carrier to pay claimant 62½% of his wage loss from and after October 18, 1960, subject to the maximum of $36.50 per week; and (3) In failing to admit in evidence a colored photograph of the face of claimant; and that the district court erred in failing to correct the errors of the Board.

As to the first specification we have a rather novel situation. The employee through his counsel asked his employer to furnish him with his weekly earnings, not once but twice, and no information was forthcoming. The Board merely found that the claimant was paid $3 per thousand feet and respondent admits this finding is incomplete in that the weekly wage was not determined, and that claimant probably had reason to complain, but that the district court permitted a complete review. It should be noted that at the district court hearing the claimant again stated his wages were approximately $200 per week and there was no rebuttal. Based on the original record and this testimony the court found the earnings to be $260 semimonthly which would make the weekly rate $130. We agree that the rule is, as contended by respondents, that if the evidence is sufficient to sustain a finding we must affirm it. That will be the point of our inquiry, what is the evidence?

The employer's first report of injury shows:

"Daily Wage *Approx 20.00* Hourly Wage *2.25 HR* * * *

"Piece Worker *Yes* * * * If yes, give method of computing earnings *$3.00 Per Thous.* * * *

"List employee's earnings last 4 pay periods:

"1. *260.00* 2. *260.00* 3. *260.00* 4. *300.00* (Approximately)"

Then under time and wage loss this appears: "Amount of weekly wage loss; Semi-monthly *$260 to $300 every 2 weeks.*"

The employee's claim for compensation contains this statement: "Wages: Weekly *$200 approx.*"

On direct examination claimant testified:

"Q. What was your pay rate at the time of and preceding the accident? A. Approximately $200 a week.

"Q. Were you paid on time or piece basis? A. On piece."

In his deposition introduced in the district court hearing the claimant testified:

"Q. Now, the last hearing before the Board you testified you were earning $200 per week at the time of your injury, is that right? A. Yes.

"Q. It was never brought out, but, about the figures of $200, which you gave representing your average, was that your average for each week or was that the highest? A. That was an average."

No evidence was offered by the respondents except that contained in the employer's first report of injury as above set forth. Respondents assert this is a written statement of wages actually earned; under their view the word "Approximately" appearing following the $300 in the fourth pay period covers only the $300 figure there set forth. We cannot believe that the word "Approximately" refers only to that figure because the earnings listed as being paid to a piece worker in the three preceding pay periods are identical at $260 each pay period. The only reasonable interpretation, in our opinion, is that all four pay period figures are approximate.

 Respondents further contend that they were under no obligation to prove claimant's case or produce claimant's pay records. Respondents well know that compensation is determined on the actual wages earned and that the Act is to be reasonably construed. There can exist no contest between a claimant and employer on the amount of wages paid, it is a mere arithmetical computation and where request is made for such information we can conceive of no legitimate reason for ignoring the request. To say that one must subpoena an employer to find out how much wages were paid is ridiculous. The employer was aware from the employee's claim that he stated his wages were approximately $200 per week. The em-

ployer had the best evidence, its payroll records, to disprove this statement if it was not approximately correct. Rather than furnish the exact information it relied on its own approximate figures. In this state of the record in our view the evidence does not support the finding of the court but will support a finding that claimant was earning $200 per week at the time of his injury.

As to the second contended error of the Board, being the failure to order payment of wage loss, the exhibit disclosing claimant's wages shows that from the time he returned to work on October 13, 1960, until the end of that year his total wages were roughly an average of $100 per week. In 1961 from the first of the year until July 16th claimant earned roughly an average of $44 per week. For the week of July 17th and thereafter for a period of time claimant earned in excess of $200 per week, but an over-all average of his earnings for the balance of the year was roughly $133 per week. During the next year, 1962, he managed to earn a fairly consistent income, averaging for the year about $196 per week or approximately his previous wages.

The claimant's testimony discloses that he could not return to his former employment because of the cold weather which affected the numbness in his face and he was subject to nose bleeds; that he went to work sorting logs and loading and that in such occupation he worked in a heated cab on a log loader. Further that the first sawing he did after the accident commenced on June 18, 1961, that thereafter at times he could not work on account of the cold but, as above pointed out, beginning in the year 1962 his earnings were fairly consistent with his previous earnings.

Respondents contend that the period following the accident, while working at a different kind of job, is not a true test of the claimant's capacity to earn, and that because in June of 1961 he returned to sawing work and earned at times as much as, or more, than he earned at the time of his injury, that his

558

capacity to earn is demonstrated to be undiminished. We do not disagree with the contentions of respondents insofar as they are applied in considering whether or not there has been a *total* loss of a portion of the earning capacity, but in our opinion that is not the question before us. It is apparent, as before stated, that the claimant did reach a point where his earning capacity was much the same as before the accident, but clearly in the interim it was not. In other words, there exists here a period of partial disability so far as his earning capacity was concerned which can be likened to a period of convalescence.

The facial injuries received by the claimant were severe and on August 5, 1961, the treating doctor advised, by letter in the way of a final report, that he had examined claimant that day and the examination revealed residual anesthesia in all of the area supplied by the second division of the fifth cranial nerve bilaterally, and that he believed such was a permanent disability. The doctor further advised that it would not be necessary to examine claimant again and he had been discharged from care on that date. Under date of September 18, 1961, the doctor further advised by letter that it was difficult to estimate an accurate amount of disability due to facial anesthesia; that it did not completely prevent claimant from earning a living as a timber faller but in the doctor's opinion under certain conditions he would undoubtedly find it a handicap; the doctor estimated the permanent disability as five percent of the body as a whole. Testifying at the hearing the doctor admitted that trying to put a percentage evaluation was practically impossible, that there was no previous experience, no books, nothing that can tell what an area of anesthesia is worth to a man; that to a man working outdoors he felt it would be a handicap to him and might be quite a considerable handicap.

In view of the type of injury suffered by the claimant, his partial disability over a period of time, his earnings record during the same period, it is our judgment that claimant should be compensated for his wage loss in accordance with the

applicable statute, and for that purpose the cause should be returned to the Board with instructions to review the evidence in light of what has been herein stated and make an award covering such wage loss as occurred as a consequence of claimant's physical condition resulting from his injury, as has been shown to exist up to the beginning of the year 1962. This shall not be regarded as a final determination since the Board has retained jurisdiction as provided in its order, which should not be disturbed.

As to the third specification, which is the failure to admit in evidence colored photographs. While objection was made as to the foundation for their admission, they were refused on the ground they were not relevant in determining the extent of disability then existing. The Board under the facts here was correct in its ruling. Passing the question of the sufficiency of the foundation, the only purpose that would be served by the photographs would be to indicate the extent of the injuries as visible in the pictures and the type or manner of treatment being undertaken at the time the pictures were taken. There was no issue as to the severity of the injuries or the treatment given for them and the pictures were clearly irrelevant.

The cause is remanded to the district court with instructions to make and enter its findings, conclusion and order consistent with this opinion, and providing for return of the cause to the Board to effectuate such order.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON, ADAIR and DOYLE concur.